IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM DIVEN OSBORNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12cv172-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Plaintiff, William Diven Osborne, applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*, and supplemental security income ("SSI") payments under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. His disability insurance benefits application was denied at the initial administrative level.[1]  Plaintiff then received a hearing before an Administrative Law Judge ("ALJ") as to both of his applications.  Following the hearing, the ALJ issued a decision in which she found Plaintiff not disabled at any time through the date of the decision.  Tr. 28.  The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of

---

[1] Plaintiff's application for disability insurance benefits was filed in January 2010 and his SSI application was filed in March 2010.  Plaintiff's SSI application was escalated to the hearing level without an initial determination.

Social Security ("Commissioner").[2]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Vocational Guidelines[5] (grids) or call a vocational expert (VE).  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings.   . . .  No

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

4

similar presumption of validity attaches to the [Commissioner's] . . . legal
conclusions, including determination of the proper standards to be applied
in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-nine years old at the time of the hearing before the ALJ.  Tr.
37.  Plaintiff had at least a high school education.  Tr. 27; 52.  Plaintiff's past relevant
work experience was as an "overnight stocker," "assistant retail manager," "cashier," and
"fast food worker."  Tr. 26.  Following the administrative hearing, and employing the
five-step process, the ALJ found Plaintiff "has not engaged in [substantial gainful
activity] since July 13, 2009, the alleged onset date."  (Step 1) Tr. 20.[6]  At Step 2, the
ALJ found that Plaintiff suffers from the following severe impairments:  "post-traumatic
stress disorder (PTSD), major depressive disorder (MDD), and minimal chondromalacia
of the right knee."  *Id.*  The ALJ then found that Plaintiff "does not have an impairment
or combination of impairments that meets or medically equals one of the listed
impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  Tr. 21.  Next, the ALJ found
that Plaintiff

has the residual functional capacity to perform light work as defined in 20
CFR 404.1567(b) and 416.967(b) except that he requires an option to sit or
stand; can climb stairs and ramps no more than occasionally; never climb
ladders, scaffolds, or ropes; never kneel or crawl; never work at unprotected

---

[6] The ALJ noted that Plaintiff has worked after the alleged onset date and continues to drill with the Army
National Guard once a month, or less if he has medical appointments, but found that this part-time work
activity does not constitute substantial gainful activity. Tr. 20.

heights, work around dangerous equipment, or operate a commercial vehicle; can perform short, simple tasks and jobs with one or two-step job instructions but with no complex or detailed job instructions or tasks; never work in crowds; never have more than occasional or superficial contact with the public; and never have more than minimal changes in work settings and routines.

Tr. 24.  The ALJ then concluded that Plaintiff "is unable to perform any past relevant work."  (Step 4) Tr. 26.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with a VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."   Tr. 27.   The ALJ identified the following occupations as examples:  "small products assembler," "office helper," and "routing clerk."  Tr. 27.[7] Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 13, 2009, through the date of th[e] decision."  Tr. 28.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision:  1) whether "[t]he Commissioner's decision should be reversed, because the ALJ's residual functional capacity determination was not supported by substantial evidence"; and 2) whether "[t]he Commissioner's decision should be reversed, because the ALJ failed to pose a complete hypothetical question to the VE."  Pl.'s Br. (Doc. 12) at 6.  The court will address each argument below.

---

[7] All of these positions were in the light, unskilled level.

## V.   DISCUSSION

### A.   Whether the ALJ's RFC determination is supported by substantial evidence.

Plaintiff challenges the ALJ's RFC determination, arguing that "the ALJ's residual functional capacity determination was not supported by substantial evidence."  Pl.'s Br. (Doc. 12) at 6.  Plaintiff points out that "the ALJ noted that the record does not contain an assessment of Mr. Osborne's physical limitations from a state agency medical consultant or an assessment of his mental limitations from a state agency psychological consultant (Tr. 26)," and requests remand of this case in order for the ALJ "to include a physical capacity evaluation by a treating physician or a consultative examination."  *Id.* at 9-10. Essentially, Plaintiff argues the ALJ's RFC assessment cannot be supported by substantial evidence absent either a physical capacity evaluation by a treating physician or a consultative examination.  The court disagrees.

At the administrative law judge hearing level, the ALJ is responsible for assessing a claimant's RFC.  20 C.F.R. § 404.1546(c).  The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence[,]" and, in general, the claimant will be responsible for providing the evidence used to make a finding about the RFC. 20 C.F.R. § 404.1545(a)(3).  Neither a physical capacity evaluation by a treating physician nor a consultative examination are required in order for the ALJ's decision to be supported by substantial evidence.[8]  Indeed, the United States Court of Appeals for the

---

[8] Plaintiff points the court to *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), arguing that in

Eleventh Circuit has held that the ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity.  *See, e.g.*, *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007) (unpublished opinion) (finding the ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician); *see also Dailey v. Astrue*, 2012 WL 3206482, at *9 (S.D. Ala. July 18, 2012) ("an ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source." (citing *Griffin v. Astrue,* 2008 WL 4417228, at *10 (S.D. Ala. Sept. 23, 2008)).  The ALJ also need not order a consultative examination.  While a consultative examination may be helpful to the ALJ in making an RFC determination, a consultative examination will be ordered only when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim. 20 CFR § 404.1519a.  *See also Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988)

---

*Coleman*, the district court "found it 'unclear' how:  'the ALJ found plaintiff could meet the threshold physical requirements of medium work, in absence of a physical capabilities evaluation ('PCE') completed by a treating or examining physician, particularly in light of plaintiff's numerous severe impairments." Pl.'s Br. (Doc. 12) at 7 (quoting *Coleman*, 264 F. Supp. 2d at 1010).  However, a number of cases disagree with *Coleman* and, thus, *Coleman* is not the definitive word on this issue.  *See, e.g.*, *Webb v. Colvin*, 2013 WL 2567556, at *5 (M.D. Ala. Jun. 11, 2013) (citing cases rejecting *Coleman* and holding that "[l]ike those other courts, this court rejects *Coleman's* seemingly mandatory requirement that the Commissioner's fifth-step burden must be supported by an RFC assessment of a physician"); *Nelson v. Colvin*, 2013 WL 1774620, at *5 (M.D. Ala. Apr. 25, 2013) (citing *Langley* and "conclude[ing] that the ALJ did not err in finding [plaintiff]'s RFC without the benefit of a physician's assessment in the record."); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1257-58 (N.D. Ala. 2011) (concluding that "the law of this Circuit does not require an RFC from a physician.").

(the ALJ is not required to order a consultative examination, and has discretion to order such an exam only when necessary); *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (same); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001) ("[I]t is within the ALJ's discretion to order a consultative examination where he determines one is warranted.").

The court finds that the ALJ's RFC is supported by the evidence of record in this case. As to Plaintiff's physical limitations, the ALJ noted "X-rays of [Plaintiff's] right knee have been negative (Exhibits 3F, 4F, 7F, 8F, 9F, and 12F)," and a January 25, 2010 MRI of Plaintiff's right knee showed "very minimal chondromalacia patella with slight fissuring of the cartilage noted without full thickness abnormality or osteochondral defect." Tr. 25. The ALJ considered Plaintiff's testimony that he "can't stand to be on [his] knee very long . . . probably 15 minutes at the most" before he has to sit down, and that he also has problems sitting for too long because his back will "cramp, [his] back starts hurting and [he] ha[s] to move around." Tr. 48-49. The ALJ also considered Plaintiff's self-report that he had no problems with his own personal care, takes care of pets, does light yard work, washes dishes, takes the trash out, helps set the table, helps clean the house, goes outside often, drills with the National Guard,[9] goes to Walmart on a regular basis, and reported that he enjoys working with his hands during a visit to the VA

---

[9] At the hearing, Plaintiff testified that he usually "ha[s] a three day drill," once a month, as a mechanic, checking oil and fluid levels in the vehicles. Tr. 41. Plaintiff further testified that he had drilled with the Army National Guard two days prior to the administrative hearing, stating that "[he] was there all day" and "s[a]t in the office, answered phones, and shredded paper for [his] sergeant." Tr. 49.

on August 4, 2010.  *See* Tr. 23; Exs. 9F & 11E.  Based on this evidence, the ALJ determined that "[t]he MRI of the claimant's knee showed only minimal findings; nevertheless, I have limited his lifting and carrying to 20 pounds occasionally and 10 pounds frequently; restricted him to a range of light work that allows him to switch positions from sitting and standing at will; and restricted postural activities related to climbing, kneeling, and crawling."  Tr. 26.[10]   Thus, the court finds there was sufficient evidence on the record for the ALJ to determine Plaintiff's physical RFC.

As to Plaintiff's mental RFC, this too is supported by substantial evidence. "Agency regulations require the ALJ to use the 'special technique' dictated by the PRTF [Psychiatric Review Technique Form] for evaluating mental impairments."  *Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) (*citing* 20 C.F.R. § 404.1520a-(a)). "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas:  'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'"  *Id.* (*quoting* 20 C.F.R. § 404.1520a-(c)(3-4)).  The ALJ is required "to complete a PRTF and append it to the decision, *or incorporate its mode of analysis into his findings and conclusions*.  Failure to do so requires remand."  *Id.* at 1214 (citing other circuits for this

---

[10] Before the ALJ there was also evidence that on April 1, 2010, during a visit to the VA, it was noted Plaintiff was taking Lortab for pain and the medication was working well.  Tr. 25.  Moreover, Irene Benson, a nurse practitioner, indicated that Plaintiff's right knee condition "prevents him from playing sports; moderately affects his ability to perform chores, shop, and recreate; mildly affects his ability to drive; and does not affect his ability to travel and feed, bathe, dress and groom himself."  Tr. 26.  The ALJ found Nurse Benson's opinion "somewhat persuasive" since she is "not considered an 'acceptable medical source.'"  Tr. 26.

holding).  In this case, while it is true that the ALJ did not order a PRTF form, she did evaluate Plaintiff on all four functional areas and, thus, she did "incorporate its mode of analysis into h[er] findings and conclusions."  *See, e.g.*, *Bentley v. Astrue*, 2008 WL 4498963, at *4 (M.D. Ga. Sept. 30, 2008 (finding no error where "although the ALJ did not complete a PRTF, he did analyze and incorporate the PRTF's mode of analysis into his decision.").  In this case, the ALJ found that Plaintiff has:  1) "*mild* restriction" in activities of daily living, Tr. 21; 2) "*mild* difficulties" in social functioning, Tr. 22; 3) "*moderate* difficulties" with regard to concentration, persistence, or pace, Tr. 22; and 4) experienced *no episodes* of decompensation of extended duration, Tr. 23 (emphasis added).  The ALJ incorporated Plaintiff's mental restrictions, limiting him to unskilled work and "short, simple tasks and jobs with one or two-step job instructions but with no complex or detailed job instructions or tasks; never work in crowds; never have more than occasional or superficial contact with the public; and never have more than minimal changes in work settings or routines."  Tr. 24.

In evaluating Plaintiff's mental limitations, the ALJ noted Plaintiff's PTSD and MDD diagnoses and that he has been treated with psychotherapy, counseling, and psychotropic and anticonvulsant medications and has generally shown improvement though he reported the side effect of drowsiness from Zoloft.  Tr. 25.[11]  The ALJ also

---

[11] At the hearing, Plaintiff testified that he suffers from seizures since returning from Iraq in approximately 2007.  Plaintiff stated that he has had "[r]oughly probably around 20 . . . if not more" seizures since returning.  Tr. 44.  Plaintiff also indicated that he has only had one seizure since his medication was adjusted.  *Id.*  That last seizure occurred two months prior to the

considered Plaintiff's self-report that he watches television programs such as CSI, Law and Order, and wrestling, plays cards and video games, and plays on the computer daily, and "he does these activities well." Tr. 23.  Additionally, Plaintiff also reported that he is able to handle money, does not need reminders to go places, follows written and spoken instructions well, finishes what he starts, is a [Royal Ranger] leader in church and attends church every Sunday and Wednesday night, and is trying to enroll in school at ITT Tech" Tr. 23; Ex. 11E.[12]   Based on this evidence, the ALJ found that "[t]he restriction on exposure to workplace hazards accommodates the possibility of blackouts[13] and the medication side effect of drowsiness.   The claimant has some significant mental limitations due to his mental impairments; however, his treatment and functional activities are such that he is not precluded from performing a range of unskilled work that does not require being in crowds or in close contact with the public." Tr. 26.  The court finds that the ALJ properly considered Plaintiff's reported activities in determining his RFC.  *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 771 (11th Cir. 2006) (finding the ALJ did not err in finding "that Jones's activities of leading an IC support group, attending church, visiting her sister, reading, watching television, and using the

---

hearing.  *Id.*

[12] Plaintiff testified that he was previously enrolled in the University of Phoenix but dropped out. Tr. 52.

[13] The ALJ noted that Dr. Cristina C. Smith, a treating psychiatrist, opined that "it is not safe for the claimant to drive (Exhibit 9F)." Tr. 26.  The ALJ found "Dr. Smith's opinion is persuasive in light of the claimant's history of blackouts related to his PTSD." Tr. 26.  The ALJ also noted Plaintiff's "blackouts have decreased with adjustment of his antoconvulsant medication." Tr. 24.

computer did not support a finding that Jones's concentration was deficient").

Moreover, in evaluating Plaintiff's RFC, the ALJ noted inconsistencies in Plaintiff's testimony.  For example, on February 24, 2010, Plaintiff "reported that he needs someone to accompany him when he goes places, needs reminders to shave and to take his medications, and needs reminding and encouragement to do household chores (Exhibit 11E).  He testified that he has a loss of interest, does not help with housework, and that his father-in-law does the yard work."  Tr. 21-22.  Plaintiff also reported that he "does not handle stress well, handles changes in routine so-so, and can only pay attention for 10 minutes at a time."  Tr. 23.  However, this testimony contradicted Plaintiff's self-report of his daily activities.  *See supra* at 11-12.

Accordingly, upon review of the record, the court finds that the ALJ's RFC is supported by substantial evidence and Plaintiff's argument lacks merit.

### B.   *Whether the ALJ posed a complete hypothetical to the VE.*

Next, Plaintiff argues that "the ALJ noted that Mr. Osborne has been prescribed a walking cane for his right knee pain, but failed to include any limitations regarding the use of his cane in the hypothetical question posed to the VE."  Pl.'s Br. (Doc. 12) at 10-11.

The hypothetical questions posed to the VE must include all of Plaintiff's impairments. *See Pendley v. Heckler,* 767 F.2d 1561, 1562 (11th Cir. 1985).  However, although the ALJ must include all of the Plaintiff's impairments in her hypothetical

13

questions to the VE, she is not required to include any limitations or allegations that are not supported by substantial evidence and/or were properly discounted.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004); *McSwain v. Bowen,* 814 F.2d 617 (11th Cir.1987).

In this case, while the ALJ noted Plaintiff was prescribed a cane, the ALJ also noted that Plaintiff testified that he uses the cane only "[e]very time [he's] in town."  Tr. 39.  The ALJ specifically asked him if he used the cane "day-to-day walking around the house or anything" and Plaintiff indicated that he did not.  Tr. 39.  Plaintiff further testified that he "can probably walk about 20 feet [. . .] without a cane."  Tr. 47.  While the ALJ did not affirmatively reject Plaintiff's need for a walking cane, it appears she impliedly did so.

Moreover, when describing his limitations due to his right knee pain, Plaintiff testified that he "can't stand to be on [his] knee very long . . . probably 15 minutes at the most" before he has to sit down.  Tr. 48.  He further testified that he has problems sitting for too long because his back will "cramp, [his] back starts hurting and [he] ha[s] to move around."  Tr. 49.  The ALJ's hypothetical clearly accounts for these limitations as the hypothetical individual was limited to "lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently; only occasionally climbing stairs and ramps, never climbing ladders, scaffolds or ropes; no kneeling or crawling; no unprotected heights or dangerous equipment, and no operation of a commercial vehicle."  Tr. 59-60.

14

The ALJ further restricted the hypothetical to "***allow him to sit or stand as necessary***." Tr. 61 (emphasis added).   Plaintiff's testimony indicates that a sit/stand option would address his limitations.   Thus, the court finds that the ALJ's hypothetical properly accounted for Plaintiff's limitations due to his right knee.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.   A separate judgment will issue.

Done this 11th day of September, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE